IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Craig Wennihan, | NO. C 09-01204 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REMANDING CASE FOR FURTHER CONSIDERATION** |
| v. | |
| Michael J. Astrue, Commissioner of Social Security | |
| Defendant. | |

## I. INTRODUCTION

Craig Wennihan ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff disability benefits. Presently before the Court are the parties' Cross-Motions for Summary Judgment.[1] The matter was submitted on the papers without oral argument. See Civ. L.R. 16-5. Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment. The Court REMANDS the case to the Administrative Law Judge ("ALJ") to make further findings of fact and reconsider his decision in light of this Order.

---

[1] (Plaintiff's Motion for Summary Judgment, hereafter, "Motion," Docket Item No. 13; Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, hereafter, "Cross-Motion," Docket Item No. 15.)

## II. BACKGROUND

Plaintiff is a fifty-seven-year-old individual who worked as a heavy equipment mechanic for most of his life. (Transcript at 369-71, hereafter, "TR.") On May 11, 2005, Plaintiff filed a Title XVI application for supplemental social security income, based on disability due to back pain, mental health problems, memory loss, hearing loss, and visual problems. (TR at 19.) On August 19, 2005, Plaintiff's claim was initially denied, and on June 16, 2006, it was denied a second time on rehearing. (Id.) Plaintiff appeared for a hearing on June 21, 2007.

At the June 21, 2007 hearing, Plaintiff testified as follows:

In 1999, Plaintiff was seriously injured in a work-related accident when a 100-ton boring rig nearly crushed him and ripped the ligaments off of the bones in his back. (TR at 371-72.) Plaintiff suffered severe injury to his lower back and legs. (TR at 372.) A few days after the accident, Plaintiff sought medical treatment at the Company clinic. (Id.) A doctor at the Company clinic took Plaintiff off work, and he has not worked since. (Id.) As a result of his injury, Plaintiff suffers severe, chronic pain in his back and legs which persists to the present day. (TR at 377.) Without pain medication, Plaintiff cannot stand up or function in day-to-day life. (Id.) The pain medication makes the pain bearable, but does not eliminate it altogether. (Id.) Walking makes the pain worse. (TR at 378.)

In or around June 2004, Plaintiff was assaulted and struck in the head with a pair of brass knuckles. (TR at 380.) Since the assault, Plaintiff has suffered with short-term memory loss and difficulty controlling his impulses. (TR at 379-81.) Plaintiff's impulse control makes it very difficult for him to get along with other people and is prone to losing his temper. (Id.) In or around March of 2008, Plaintiff was in another altercation during which he ruptured a tendon in his left hand, for which he had surgery. (TR at 384.)

After considering Plaintiff's testimony and the evidence of Plaintiff's medical condition in the record, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because he has the residual functional capacity to perform a wide range of "medium" work. (TR at 29.) While acknowledging that Plaintiff's "exertional limitations do not allow him to perform the full range of 'medium' work," the ALJ found that "there are a significant number of jobs in the national economy that he could perform." (Id.)

Presently before the Court are the parties' Cross-Motions for Summary Judgment.

## III. STANDARDS

To be eligible for benefits under Title XVI of the Social Security Act, the claimant must be disabled. The claimant bears the burden of proving disability within the meaning of the Social Security Act. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (internal citations omitted); see

also 42 U.S.C. § 1382(c)(3). A claimant is "disabled" for purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

There is a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920. If at any step, the Social Security Administration makes a determination of disability or non-disability, the evaluation process terminates. 20 C.F.R. § 416.920(a)(4). First, the evaluator considers the claimant's current work activity and makes a determination of non-disability if he is performing "substantial gainful activity." Second, the evaluator determines whether the claimant has suffered from a severe, medically determinable impairment for at least twelve months and makes a determination of non-disability if he has not. Third, the evaluator assesses whether the claimant's condition meets or equals any impairments on the Social Security Administration's list of predefined qualifying impairments, and makes a determination of disability if it does.[2] Fourth, the evaluator determines whether the claimant can perform his past relevant work and makes a determination of non-disability if he can. Fifth, the evaluator considers whether the claimant can move to alternative work; the evaluator makes a determination of disability if he cannot, and a determination of non-disability if he can.[3] Id.; see also Barnhart v. Thomas, 540 U.S. 20 (2003).

A district court overturns an ALJ's determination of non-disability only if it is unsupported by substantial evidence or based on legal error. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence "means more than a mere scintilla, but less than a preponderance;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[2] Between the third and fourth steps of the disability determination, the evaluator assesses the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). RFC is determined based on medical and other evidence in the claimant's record and is used during the final two steps to determine whether the claimant is able to do his relevant previous work or other work. 20 C.F.R. § 416.920(e).

[3] Additionally, during the fifth step, the evaluator considers the "vocational factors" of age, education, and past work experience to determine whether the claimant can transition to other work. 20 C.F.R. § 416.920(f).

3

1 Id. (internal citations and quotation marks omitted.) The reviewing court considers the record as a
2 whole, not merely the evidence lending support to the ALJ's findings. See Reddick v. Chater, 157
3 F.3d 715, 720 (9th Cir. 1998). The court cannot substitute its own conclusion for the ALJ's if there
4 is sufficient evidence to support the ALJ's outcome. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th
5 Cir. 1999). Questions of credibility and resolution of conflicts in the testimony are solely
6 determinations to be made by the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

## IV. DISCUSSION

Plaintiff moves for summary judgment on the grounds that: (1) there is no support in the record for the ALJ's conclusion that Plaintiff can perform medium-level work; (2) the ALJ failed to consider the effects of Plaintiff's mental impairments on his ability to work; (3) the ALJ did not adequately consider the effects of Plaintiff's subjective pain; and (4) the ALJ relied on the testimony of a vocational expert which was incomplete. (Motion at 7.) Defendant contends that all of the ALJ's findings were appropriately supported by substantial evidence and that the denial of benefits should be affirmed. (Cross-Motion at 3-9.) The Court considers each of Plaintiff's contentions in turn.

### A. Evidence of Plaintiff's Ability to Perform Medium-Level Work

Plaintiff contends that the ALJ's determination that he is capable of performing medium-level work was not supported by substantial evidence because he relied solely on the RFC assessment of a state agency physician who never examined Plaintiff, and whose opinion is based solely on a review of the medical information contained in the file. (Motion at 10.) Defendant responds that in addition to relying on the state agency physician's assessment, the ALJ independently assessed the medical evidence of record, and Plaintiff did not produce any other opinion from a medical source regarding his RFC or disability. (Cross-Motion at 6.)

The Code of Federal Regulations distinguishes three types of physicians' opinions: (1) those who treat the claimant ("treating physician"), (2) those who examine but do not treat the claimant ("examining physician"); and (3) those who neither examine nor treat the claimant but review the claimant's medical records ("nonexamining physician"). 20 C.F.R. § 404.1527(d), (f).

4

The opinion of a treating doctor is afforded more weight than the opinion of a doctor who has not treated the claimant. Reddick, 157 F.3d at 725; 20 C.F.R. § 416.927(d)(2). Where the treating doctor's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. However, where there is conflicting medical evidence, the ALJ must determine credibility and resolve the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Although the treating physician's opinion receives deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). The ALJ must provide his own interpretations and explain why he is crediting the examining physician's opinions and discrediting the treating physician's opinions. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ found that Plaintiff "retains the residual functional capacity to perform a wide range of 'medium' work, lifting and carrying up to 50 lbs. occasionally and 25 lbs. frequently and sitting, standing, and walking up to 6 hours each in an 8-hour workday with usual breaks." (TR at 24.) In making this finding, the ALJ stated that he relied on "the totality of the medical opinions in the record, none of which restricted the claimant from performing at least 'simple' and 'medium' work for 12 continuous months at any time." (TR at 24.) The ALJ further stated that since the record did not contain any "medical source RFC reports from any treating or examining physician or clinician willing to support [Plaintiff's] application for disability," the ALJ "closely considered the medical opinions of the State Agency physicians and consultants." (Id.)

The Court finds that the ALJ did consider the entire medical record before him in making his RFC assessment. The record reflects that the ALJ undertook a detailed analysis of a substantial number of medical reports from a variety of treating and examining doctors. (TR at 21-23.) Since the record did not contain any medical opinion of a treating or examining physician which directly contradicted the opinion of the nonexamining State Agency physician regarding Plaintiff's RFC and disability status, the ALJ was entitled to rely on the State Agency physician's opinion.

1 Accordingly, the Court finds that Plaintiff is not entitled to summary judgment on the ground
2 that the ALJ relied solely on the medical opinion of a non-examining State Agency physician in
3 determining that Plaintiff was capable of performing medium work.

4 **B.** **Evidence of Mental Impairments**

5 Plaintiff contends the ALJ's determination that Plaintiff is not disabled was not supported by
6 substantial evidence because he did not adequately consider the effects of Plaintiff's mental
7 impairments on his ability to work. (Motion at 10-11.) Defendant responds that several opinions by
8 examining and non-examining physicians provided substantial evidence supporting the ALJ's
9 finding that Plaintiff's mental impairments would not preclude him from performing simple or
10 unskilled work. (Cross-Motion at 3-6.)

11 Although an ALJ must consider the combined effects of all a claimant's impairments,[4] an
12 ALJ's ultimate determination regarding a claimant's RFC need only be supported by substantial
13 evidence. Tacket, 180 F.3d at 1098.

14 Here, the ALJ concluded that Plaintiff "would be 'not significantly limited' in his ability to
15 perform simple, repetitive tasks or in maintaining concentration, persistence, or pace required in the
16 performance of simple or 'unskilled' work; but would be perhaps 'moderately' limited in
17 understanding, remembering, and carrying out detailed or complex job instructions." (TR at 28.) In
18 making this finding regarding the effect of Plaintiff's mental impairments, the ALJ considered the
19 following:

20 (1) A February 3, 2006 neurological evaluation by consultant Thomas M. Misukanis, Ph.D. ("Misukanis Report") which measured Plaintiff's I.Q. at 103, and reported
21 "mild to moderate cerebral dysfunction with deficits noted in executive functioning, attention, and processing." The Misukanis Report also stated that Plaintiff's short-
22 term memory functions were "slightly diminished," and that "[h]is behavioral presentation is remarkable for impulsivity, disinhibition, tangentiality and low
23 frustration tolerance." (TR at 23, 259-60.)

24 (2) A March 16, 2006 consultative psychological evaluation by Dustin J. Warner, Psy.D. ("Warner Report"), which concluded that Plaintiff's thought processes were
25 "essentially intact" with content inconsistent with psychotic symptoms. The Warner Report also stated that Plaintiff made approximately normal eye contact, spoke with

---

27 [4] See 42 U.S.C. 423(d)(2)(B).

28
6

       "clear" speech (although with many expletives), and did not present as having a personality disorder or a pain disorder. Dr. Warner concluded that Plaintiff had "major depressive disorder, possible cognitive disorder, based on [Plaintiff's] self-report, possible drug abuse in past (and) may have a chemical dependency history." (TR at 23, 269-71.)

(3)    An April 17, 2007 consultative psychological evaluation by Robert Sayad, Ph.D. ("Sayad Report"), which placed Plaintiff's full-scale IQ within the average range, and found Plaintiff's affect "quite restricted," although his thought processes were "coherent and relevant." The Sayad Report also stated that Plaintiff's mood was "dysphoric" and that there was some evidence of both cognitive and psychomotor slowing. Dr. Sayad diagnosed Plaintiff with "cognitive disorder, not otherwise specified, major depressive disorder" and ruled out "opioid dependence." (TR at 23, 296-97).

Considering the totality of the record before him, the ALJ concluded, "the medical evidence indicates that the claimant has degenerative disc disease and a cognitive disorder, impairments that are 'severe' within the meaning of the Regulations but not "severe enough to meet medically equal, either singly or in combination, one of the impairments listed [in the Regulations]." (TR at 23.)

The Court finds that the ALJ's written decision reflected due consideration of all of the evidence of mental impairments on the record. The ALJ's thorough discussion of each of Plaintiff's several psychological evaluations does not "reflect almost no consideration of the effects of [Plaintiff's] mental impairments" as Plaintiff contends. (Motion at 11.) The evidence that Plaintiff would be "at least moderately impaired in his ability to respond appropriately to the usual work situations and changes to the routine work setting" does not directly contradict the ALJ's finding that Plaintiff would not be "'significantly limited' in his ability to perform simple, repetitive tasks or in maintaining concentration, persistence, or pace required in the performance of simple or 'unskilled' work." (Motion at 11; TR at 24.)

Accordingly, the Court finds that Plaintiff is not entitled to summary judgment on the ground that the ALJ did not adequately consider the effects of Plaintiff's mental impairments.

**C.**    **Assessment of Plaintiff's Credibility**

Plaintiff contends that the ALJ improperly discounted his testimony regarding his subjective complaints of pain. (Motion at 11-13.) Defendant responds that the ALJ provided a proper rationale for discounting Plaintiff's subjective claims. (Cross Motion at 7-8.)

7

Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnel v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991). In the absence of affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing reasons" for rejecting the claimant's testimony. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). In particular, the ALJ must identify specific testimony that is not credible or specific evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the record shows that Plaintiff suffers from degenerative disc disease and suffers with "[c]onstant aching and throbbing low back pain with intermittent pain in both legs." (TR at 140 (Report of treating physician Richard A. Nolan, M.D.).) Plaintiff's treating physician prescribed narcotic pain medication to give Plaintiff some relief from his back and leg pain. (Id.) This objective evidence that Plaintiff suffers with severe chronic back and leg pain supports Plaintiff's testimony regarding his subjective experience of often-debilitating pain. (TR at 377-78.)

At the June 21, 2007 hearing, Plaintiff testified, "I can't even stand up without the drugs. I can't function at all. I just, you know, after I go through withdraw [sic], I just become pretty much bedridden." (TR at 377.) Plaintiff further testified that his pain feels like "a dull ache that almost makes me moan out load–well, I do moan out loud–and sharp, stabbing pains in the legs and feet and cramps." (Id.)

The ALJ discounted Plaintiff's subjective complaints of pain in part on his finding that Plaintiff's "radicular back pain was pretty much controlled following his March 2002 left-side microdiscectomy, in his own words, in fact, by '75%.'" (TR at 25 (citing April 11, 2002 Report of treating physician Richard A. Nolan, M.D.).) The Court finds that the ALJ's conclusion comes from a selective reading of the record. The physician's report that the ALJ relies on for his conclusion that Plaintiff's March 2002 surgery achieved its purpose of controlling Plaintiff's back and leg pain, states, "The procedure was accomplished with a significant decrease in his left leg symptoms, which he estimates to be at 75%. This has unmasked the right leg pain, which is now greater." (TR at

8

174.) Far from showing that Plaintiff's back pain was under control following the 2002 procedure, the record reflects that while Plaintiff experienced some relief in his left-leg symptoms, his right-leg symptoms were exacerbated. No mention is made in the report of the effect of the treatment on Plaintiff's low-back pain, except to state that "[t]he lumbar radicular symptoms persist." (Id.)

Furthermore, in his analysis of Plaintiff's subjective complaints, the ALJ stated,

> In a typical day, [Plaintiff] reported that he tries to obtain food and a place to spend the night. The undersigned presumes that in these activities, the claimant is able to walk. [Plaintiff] also finds time to play music, his guitar "pretty good," and acknowledges that he remains able to prepare his own meals, do his own laundry, drive a motor vehicle, and shop for groceries, etc.

(TR at 25.)

In Vertigan v. Halter, the Ninth Circuit found that the ALJ improperly discounted a plaintiff's subjective pain complaints when he relied on evidence that the plaintiff was able to go grocery shopping, walk in the mall, get together with friends, play cards, swim, watch television, and read. 260 F.3d 1044, 1049 (9th Cir. 2001). In that case, the court reasoned as follows:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One need not be "utterly incapacitated" in order to be disabled. In addition, activities such as walking in the mall and swimming are not necessarily transferrable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.

Id. at 1050 (internal citations omitted).

The Court finds that as in Vertigan, the ALJ here improperly considered Plaintiff's reported ability to carry on his day-to-day activities as discounting Plaintiff's subjective complaints of pain and difficulty walking and standing for prolonged periods of time. Plaintiff's efforts to find food and a place to sleep at night are not evidence that Plaintiff does not experience severe pain that will prevent him from performing work that requires him to walk or stand with regularity. Especially considering that Plaintiff is homeless, Plaintiff must carry on these activities in order to survive in spite of any pain he may be experiencing. (TR at 369.)

9

1  Since the ALJ improperly discounted Plaintiff's subjective complaints of pain despite
2 objective evidence in the record of severe and chronic pain, the Court finds that the ALJ's
3 conclusion that Plaintiff is capable of performing a range of "medium" work, which "involves lifting
4 no more than 50 lbs. at a time or carry of objects weighing up to 25 lbs.," and that may require "a
5 good deal of walking or standing," is not supported by substantial evidence.[5]

6  Accordingly, the Court REMANDS the case to the ALJ to make further findings of fact
7 consistent with this Order, and to reconsider his findings regarding Plaintiff's subjective complaints
8 of pain and the impact of that pain on his ability to perform "medium" or "light" level work.

### D. Step Five Analysis

Plaintiff contends that, under the Step Five analysis, the vocational expert's testimony to prove the existence of jobs in the national economy which Plaintiff can perform had no evidentiary value because the hypotheticals that the ALJ posed to the vocational expert were incomplete. (Motion at 13-14.)

At Step Five, the burden is on the ALJ to show that other work exists in "significant numbers" in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R §§ 404.1520(g), 404.1560(c); Tacket, 180 F.3d at 1100; Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). To show that a claimant has "readily transferable" skills for work that exists in significant numbers, the ALJ must identify more than just a single occupation. Lounsburry v. Barnhart, 468 F.3d 1111, 1116-17 (9th Cir. 2006). There are two ways for the ALJ to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can perform: (1) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, App. 2 (commonly referred to as the "Grids") or (2) by the testimony

---

[5] In Part IV.A, *supra*, the Court found that the ALJ adequately reviewed and considered the relevant medical records in making his finding that Plaintiff is capable of performing "medium" level work. However, Plaintiff's subjective complaints of pain casts substantial doubt on this conclusion. In making an RFC determination without sufficiently taking into account Plaintiff's pain symptoms, the ALJ failed to meet his statutory obligation to "consider the combined effect of all of the individual's impairments." See 42 U.S.C. § 423(d)(2)(B).

1 of a vocational expert. Tacket, 180 F.3d at 1101; Howard v. Heckler, 782 F.2d 1484, 1486 n.1 (9th
2 Cir. 1985).

3       When the ALJ relies upon the testimony of a vocational expert at Step Five to determine
4 whether a claimant can use his skills in other work, "[h]ypothetical questions asked of the vocational
5 expert must 'set out all of the claimant's impairments.' If the record does not support the
6 assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." Lewis v.
7 Apfel, 236 F.3d 503, 517 (9th Cir. 2001).

8       Here, the ALJ found that Plaintiff could not perform his past relevant work, and thus the
9 burden of proving that there were a significant number of other jobs in the economy that Plaintiff
10 could perform transferred to Defendant. The ALJ relied on the testimony of a vocational expert to
11 conclude that "the claimant would be capable of making a vocational adjustment to other work" that
12 was available in the national economy. (TR at 272.) In posing hypothetical questions to the
13 vocational expert, the ALJ asked whether there were "any jobs customarily performed in the
14 national economy" that could be performed by "[a] person, 50 to 54 years of age, with a high school
15 diploma and prior relevant work experience such as [Plaintiff] had who is limited to light work, who,
16 therefore, . . . cannot do any of [Plaintiff's] prior work and who is limited to . . . simple, repetitive
17 tasks, unskilled work." (TR at 391.) The vocational expert responded with the examples of usher,
18 lobby attendant, parking lot attendant, and parking lot cashier positions, which he testified exist in
19 substantial number in the greater Santa Clara County area.

20       Plaintiff's attorney posed a further question to the vocational expert, following up from the
21 ALJ's hypothetical, asking him, "[I]f the individual had difficulty interacting with the public or
22 supervisors and so on, would this erode the job base?" (TR at 392.) The vocational expert
23 responded,

> [I]f the level of difficulty interacting with the public was substantial and couldn't perform jobs dealing with the public, I believe all the positions I've outlined did have some interaction with the public so I think those positions would be eroded if, indeed, the level or the severity of the limitation was substantial.

11

1 (Id.) The record shows that at no point did the ALJ inquire as to the effect Plaintiff's chronic and
2 severe pain would have on his ability to perform work that the vocational expert stated was available
3 to an individual like Plaintiff in the national economy.

4 Defendant contends that the ALJ was not obligated "to rely on the vocational expert's
5 responses to a hypothetical question posed by Plaintiff, where the ALJ did not find that the record
6 supported Plaintiff's hypothetical questions." (Cross-Motion at 9.) In support of this proposition,
7 Defendant cites Andrews v. Shalala, a case in which the Ninth Circuit found that "the ALJ's
8 hypothetical was insufficient to carry the Secretary's burden of proving ability to engage in work in
9 the national economy" because the ALJ's hypothetical referred only to the claimant's social
10 limitations but not to his moderate limitations in other areas, such as his limitations in "adaptation."
11 53 F.3d 1035, 1043-44 (9th Cir. 1995). The Court finds that Andrews actually supports Plaintiff's
12 position.

13 Medical evidence which the ALJ did not specifically discount showed that Plaintiff would
14 likely have significant difficulty in positions that required more than minimal interaction with the
15 public. The Misukanis Report, for example, stated that Plaintiff's "pattern was strongly suggestive
16 of a characterological disorder with indications of paranoia, nonconformity, impulsivity,
17 interpersonal alienation, depression, anxiety, and somatic pre-occupation." (TR at 260.) Dr. Sayad
18 concluded that Plaintiff's "ability to interact appropriately with co-workers, supervisors, and the
19 public on a consistent and sustained basis would appear to be moderately impaired." (TR at 297.)
20 The Sayad Report further stated that Plaintiff's "ability to respond appropriately to usual work
21 situations and to changes in a routine work setting would appear to be at least moderately impaired."
22 (TR at 297.) This type of "adaptation" impairment is not unlike the impairment suffered by the
23 claimant in Andrews, which the ALJ neglected to include in hypotheticals to the vocational expert,
24 and upon which basis the Ninth Circuit remanded for a "determination of vocational ability based
25 upon a hypothetical that accurately reflects [the claimant's] mental residual functional capacity."
26 Andrews, 53 F.3d at 1043.

27
28

12

The Court notes that all of the jobs which the vocational expert suggested could be performed by Plaintiff would likely involve substantial interaction with the public: usher, lobby attendant, parking lot attendant, and parking lot cashier. The ALJ's failure to pose hypotheticals to the vocational expert which accurately reflected Plaintiff's mental impairments and subjective experience of pain when standing or walking robbed the vocational expert's testimony of any evidentiary value. Lewis, 236 F.3d at 517. Thus, the Court finds that the ALJ did not meet his burden of establishing at Step Five that jobs existed in the national economy that Plaintiff was capable of performing.[6]

Accordingly, the Court REMANDS the case to the ALJ to conduct further factfinding with the vocational expert, and to pose hypotheticals to the vocational expert which reflect Plaintiff's mental impairments and difficulty interacting with the public as well as his subjective complaints of pain.

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment. The Court DENIES Defendant's Cross-Motion for Summary Judgment. The Court REMANDS the case to the ALJ to make further findings of fact and to reconsider his decision in light of this Order.

The Clerk of Court shall administratively close this case. Any party may move to have this case reopen within ten (10) days of a final decision by the Commission on remand.

Dated: December 9, 2009

JAMES WARE
United States District Judge

---

[6] The Court's finding in Part IV.B, *supra*, that the ALJ adequately considered evidence of Plaintiff's mental impairments in making an RFC determination is not contrary to the Court's finding at Step Five that the ALJ did not adequately address Plaintiff's mental impairments in posing hypotheticals to the vocational expert. Regardless of the outcome of the RFC assessment between Steps Three and Four, the ALJ must pose hypothetical questions to the vocational expert at Step Five which set out all of the Plaintiff's impairments.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Elizabeth Firer Elizabeth.Firer@ssa.gov
Gretchen Anne Regenhardt GRegenhardt@crla.org
Odell Grooms Odell.Grooms@ssa.gov
Sarah Lynn Ryan sarah.ryan@ssa.gov

**Dated: December 9, 2009**                    **Richard W. Wieking, Clerk**

                                                          **By:    /s/ JW Chambers**
                                                                  **Elizabeth Garcia**
                                                                  **Courtroom Deputy**